## CIRCUIT COURT OF SHENANDOAH COUNTY

Robert H. Kapp et al.

v.

Nathaniel S. Smith et al.

October 21, 1981

Case No. (Chancery) 1933

By JUDGE HENRY H. WHITING

This suit in chancery, filed October 12, 1981, by five debtors who executed three negotiable notes securing a purchase money deed of trust upon property of all five debtors payable to the four individual defendants who trade as partners, seeks to enjoin the enforcement of that trust, alleging that an admitted default in the payment of two of the periodic installments of principal and interest had not resulted in an acceleration of the entire balance. The two issues to be resolved are whether there was a valid acceleration of the entire indebtedness and, if so, whether that acceleration was later waived by subsequent acceptance of the payments in arrears as well as payments not yet due.

The five complainants executed a purchase money deed of trust on January 15, 1976, securing the payment of three notes of even date therewith aggregating $40,000.00, each one of the three payable in monthly installments of principal and interest at 9% totalling $168.49 beginning February 1, 1976. The entire indebtedness was due and payable February 1, 1986. The three notes were executed separately by the five debtors, Note A being executed by Robert H. Kapp and Jean Kapp, his wife, Note

B by Samuel R. Berger and Susan H. Berger, his wife, and Note C by Marvin A. Diamond. The deed of trust provided that the payments could be made in one monthly payment by any one, an intermediary number or all the makers of the notes without affecting their several liabilities, these payments being merely a matter of convenience for all the parties. Nowhere in the deed of trust or notes is there anything to indicate that the makers were partners or that any one maker spoke for another of the makers. However, both Mr. Berger and Mr. Teates testified that Mr. Berger advised Mr. Teates at the closing that he was to be the bookkeeper and contact person for all five makers. The evidence is silent as to whether the other four makers heard this or expressly authorized Mr. Berger to so act.

The evidence does show that all of the periodic payments which came to be made quarterly in advance were made by Mr. Berger without incident from February 1, 1976, through February of 1981. Mr. Berger testified that his records showed that the February payment, which would have covered the period of February 1 through the end of April was duly mailed, but Mr. Teates's records showed that it was never received, and Mr. Berger's testimony was that the check never cleared and, therefore, it may be assumed that it was either never sent or lost in the mail. No complaint was made of the failure to make this quarterly payment during that entire quarterly period. The payment due May 1 was not made because of the oversight of Mr. Berger, but the first notice he had that this payment was in arrears came in the form of a letter dated July 15, 1981, from H. K. Benham, III, Esquire, counsel for the creditors, advising that the principal sum due of $23,514.93, with interest at 9% from February 1, 1981, was due, the entire principal was being demanded, with foreclosure to follow if payment was not made "immediately to this office. Full payment of the three notes is required and attempting to bring the monthly payments up to date will not be satisfactory to avoid the foreclosure."

Immediately upon receipt of this letter, both Mr. Berger and Mr. Teates agree that Mr. Berger called Mr. Teates from his own home, telling him he thought the payments had been made but would verify as soon as he arrived at his office and he would again call Mr. Teates. They both agree that in the second telephone conversation Mr. Berger

told Mr. Teates that the February payment had been made but must have been lost in the mail since the check had not cleared, admitted he had inadvertently overlooked the May payment but expressed dismay at the lien creditors' action because of his inadvertent oversight.

He and Mr. Teates disagree about what Mr. Teates said he and his partners would do if the mistake was rectified.

Mr. Berger testified that Mr. Teates said that he would remain neutral in the matter and would discuss with his partners what action they would take if Mr. Berger sent in the current payments. Mr. Berger agrees with Mr. Teates that there was no discussion as to what effect the receipt and cashing of the checks to cure the defaults might be. There was some specific cross examination as to Mr. Berger's "not remembering" that Mr. Teates said he was not waiving the default by the receipt and acceptance of the check. Mr. Berger explained that his statement meant that Mr. Teates did not say this because he would have specifically remembered it had it been said. Mr. Berger is a lawyer, and the Court believes that any "non-waiver" statement by Mr. Teates would have been so significant as to have charged Mr. Berger with notice of any such statement, and the fact that he did not remember the statement as having been made is sufficient for the Court to treat Mr. Berger's testimony as a denial that Mr. Teates ever made such a statement.

Mr. Teates's version of the second telephone conversation was that the creditors were demanding payment of the entire balance because of the low interest rate but that he would discuss with the other partners the possibility of a different arrangement. Mr. Teates also said Mr. Berger agreed that he would immediately forward the back payments and bring the payments up to date, but Mr. Teates specifically told Mr. Berger that the receipt of those payments would not "cure the default."

Mr. Berger forthwith mailed not only the two payments in arrears but also the payment which was not yet due, that being a payment for the period beginning August 1, 1981, and extending through the end of October, 1981. Although Mr. Berger's cover letter referred to the check "pursuant to our telephone conversation," the evidence

of both parties indicates that the payment in advance was never discussed between them.

Mr. Teates testified that he kept the check three days and then cashed it on July 24, 1981.

Apparently the check with Mr. Berger's cover letter crossed in the mail with another letter from Mr. Teates to Mr. Berger indicating that the creditors were unwilling to continue the trust but would permit Berger to pay to date and agree that the trust would continue until February 1, 1982, if Berger prepared an agreement modifying the relation of the parties and terminating the financing as of February 1, 1982. That letter never mentioned the making of the August to October payment in advance.

## CONTENTIONS

### (1) *Acceleration*

(a) Insufficient Notice in Letter. The complainants contend that the notice of July 15, 1981, was insufficient to accelerate the indebtedness since it was not sent to all five debtors. The creditors claim that since Berger was the "contact person" the notice need only have been sent to him, their counsel, contending that addressing the notice also to Mr. Kapp and to Mr. Diamond was mere surplusage, the notice only being required to be addressed to "Samuel R. Berger, Esquire, Attorney at Law."

(b) Telephone Conversation an Acceleration. The creditors also contend that if the letter of July 15, 1981, was not a proper acceleration the indebtedness was thereafter properly accelerated in telephone conversations between Berger and Teates following Berger's receipt of that letter of July 15, 1981.

### (2) *Waiver of Default*

The debtors also contend that even if the indebtedness had been properly accelerated, such an acceleration was waived by acceptance of the check of Berger for the arrearages and the payment in advance. The creditors urge that the entire relationship between the parties changed upon acceleration of the indebtedness and there could be no waiver of the acceleration but only a new bilateral contract

consummated between the parties; moreover, such a contract was never consummated because of the debtors' failure to respond to the creditors' offer to contract by drawing the suggested document limiting the term of the trust to February 1, 1982, at the same time the payments in arrears were made in July.

## HOLDING

The resolution of the controversy requires a careful analysis of the facts, an interesting review of the law of contracts and a reconciliation of what appears to be a rigid rule in the law of mortgages in some states with the law of contracts.

(1) *Acceleration.*

(a) The Court finds from the evidence that there was not a valid acceleration of the indebtedness. The notice of July 15, 1981, omitted two of the five debtors who not only were co-owners of the property but also signatories on both the notes and the deeds of trust. The Court does not find the evidence sufficient to show that these parties constituted Samuel R. Berger as their agent for the purpose of receiving notice of default and subjecting them to a vastly different liability by reason thereof. Without such an agency, notice to less than all the debtors is an ineffective acceleration. *Lee v. O'Quinn*, 190 S.E. 564 (Ga. 1937).

> If the debtors are joint and not several obligors, the receipt of such notice by one of them before a tender of the amount in default, which notice is not received by the others before such tender, will not operate to accelerate the maturity of the future installments (citing a case) *Id.*, at 566.

(b) The subsequent telephone conversations between Teates and Berger did not constitute a notice of acceleration. Mr. Teates assumed the letter of July 15, 1981, as a valid acceptance and gave no subsequent notice to Mr. Berger in the telephone conversations that he was

accelerating the indebtedness, the thrust of those conversations being what might be done to cure whatever default had been noted in the letter of July 15, 1981.

(2) *Waiver of Acceleration or Reinstatement of Prior Installments.*

Even if the indebtedness had been validly accelerated, as contended by the creditors, the acceleration was either waived or a new contract made by the acceptance of the check of Mr. Berger, not only making good the default but prepaying future installments.

Both counsel have ably advanced their clients' respective positions as to their contractual relations after the acceleration. Counsel for the creditors advances what appears to be a sound theory that once there has been a valid acceleration, the entire trust is due and payable, and a new contract, with all the implications thereof, must be negotiated to reinstate the former payment schedule. Counsel for the debtors argues that acceleration may be waived and the former contract restored just as any other breach might be waived and the contract reinstated. The Court has read all of the authorities cited by the parties and notes that the Courts are split on the question of waiver of acceleration, with Mr. Glenn in the creditors' corner, § 51, Glenn on Mortgages[1]. There would seem to be little doubt that Virginia would join the majority of the cases cited in the annotation in A.L.R. in holding that acceleration could be waived after default and the original schedule reinstated by acceptance of the payments in arrears and that appears to be the rationale of *Fant v. Thomas*, 131 Va. 38 (1921). Counsel do not agree as to the facts in *Fant*, counsel for complainants contending that the *Fant* debt had not been accelerated when payment was received, and counsel for the debtors contending to the contrary. The trust provided for an automatic acceleration upon default, 131 Va. at 43, and can be read as standing for the proposition that acceptance

---

[1] Note, however, Mr. Glenn justifies his position on the basis that the debtor was already "under duty to make [the payment]." These debtors were NOT under a duty to PREPAY the third installment.

of the past due installments after acceleration does waive the default. Virginia rejects the California justification for a similar holding by relieving against a forfeiture or penalty and bases its holding upon waiver, *Id.*, at 44-45. While *Fant* is not a clear holding in favor of the debtors' position, it does indicate the position that this Court believes the Supreme Court of Virginia will take when faced squarely with a default in the deed of trust which requires a notice of acceleration, as in this case, as distinguished from an automatic acceleration as in *Fant.*

Although not advanced in argument, the Court believes there is a further ground for holding that the trust may not be accelerated at this time. That advance is suggested by a careful review of the law of offer and acceptance in bilateral contracts. In effect, these debtors offered a new contract; that is, they tendered an installment not due in the letter of July 15, 1981, conditioned upon a reinstatement of the former schedule of payments in the deed of trust. That offer was accepted when the check was cashed without prior notice that the offer was rejected. The debtors had a right to condition their tender, and the creditors accepted that condition by cashing the check. While *Atkins v. Boatwright*, 204 Va. 450 (1963), is authority for the proposition that cashing a check marked "in full" in tender of a disputed account is not an accord and satisfaction where the creditor does not assent to the accord and satisfaction, that principle is not applicable here because:

(1) The creditors did not bring home to the debtors their refusal to accept the check with the conditions attached, as in *Boatwright.* In *Boatwright*, the evidence showed that the creditors told the debtor before they cashed the check that it was not being accepted in full but that the debtor at no time requested the return of the check before it was subsequently cashed after they had been told it was accepted only in partial payment. In this case, there never was any comment by the debtors prior to cashing the check. The Teates' letter of July 20, 1981, which crossed in the mail with the Berger letter of the same date enclosing the check, never referred to the prepaid installment since it had never been discussed.

(2) The check tendered in *Boatwright* was for less than the full amount claimed; in this case, both creditors and debtors agree that the check tendered here was for more than the amount agreed to be due at that time and, thus, injected a new element not present in *Boatwright*.

(3) The burden is on the debtor on a plea of accord and satisfaction to show that the creditor "expressly accepted" (204 Va. at 454) the tender as full satisfaction and there had been an express rejection of the accord before the check was cashed. While there surely could be an "implied" acceptance of an accord and satisfaction, more evidence is required to establish this in that unique situation than an offer of a simple contract, as in this case.

The parties have agreed that the Court would hear the matter now on the merits and it has done so. It therefore appears that the complainants are entitled to a decree enjoining the creditors from proceeding further. An appropriate injunction may be prepared by the complainants, noting the creditors proper objections and exceptions.

Although not discussed at either hearing, the Court further notes that interest has been paid through October, 1981, and wonders how there can be a sale during October.